## GUARANTY STATE BANK OF GRAHAM v. NEILL. (No. 11115.)

(Court of Civil Appeals of Texas. Fort Worth. May 2, 1925.)

**1. Evidence ⊚�longrightarrow317(4)—Testimony relating to conversation between garnishee and judgment debtor as to note transferred by debtor to bank held improper as being hearsay.**

Where, in garnishment proceedings, it was contended that note, issued by garnishee, and purchased from judgment debtor by bank, was acquired by latter without consideration and to defraud plaintiff, testimony of garnishee relating to conversation had by witness with president of judgment debtor offered to show by inference that payee of note still owned it, notwithstanding purported transfer, *held* improper as being hearsay.

**2. Fraudulent conveyances ⊚�longrightarrow292—Refusal to permit president of bank to explain cause of delay in pressing maker for payment of note held error.**

Where it was contended in garnishment proceedings that note issued by garnishee and purchased by bank was acquired without consideration and for the purpose of defrauding plaintiff, refusal to permit president of bank, after plaintiff introduced testimony to the effect that bank had delayed pressing the maker for payment of note, to explain cause of such delay, *held* error.

**3. Fraudulent conveyances ⊚�longrightarrow255(4)—Commissioner of banking held necessary party.**

Where note, issued by garnishee, and purchased by bank from judgment debtor, had been taken over subsequent to service of writ of garnishment with assets of bank by commissioner of banking, *held*, in view of Rev. St. arts. 456–459, inclusive, and 482–485, inclusive, commissioner was a necessary party.

Appeal from Tarrant County Court; H. O. Gossett, Judge.

Garnishment proceeding by J. A. Neill against Elridge Price, garnishee, and the Guaranty State Bank of Graham. From a judgment for plaintiff, the bank alone appeals. Reversed and remanded.

J. W. Hassell and F. J. Scurlock, both of Dallas, for appellant.

C. E. McGaw and W. F. Patterson, both of Fort Worth, for appellee.

DUNKLIN, J. J. A. Neill, who held a judgment against the Western Producing & Drilling Company for the sum of $500, with interest and costs of suit, sued out a writ of garnishment which was duly served upon Elridge Price, which required him to answer what, if anything, he owed the defendant Western Producing & Drilling Company. The garnishee answered that he had executed to that defendant a promissory note for the principal sum of $3,500, which was given in consideration for an oil well rig purchased from the defendant company, and which was

secured by a mortgage lien upon the property so purchased. The garnishee further alleged that $250, besides interest, had been paid on the note to the payee, and that he claimed a further credit on the note of the sum of $2,000, by reason of the failure of the payee to furnish parts of supplies in connection with the oil rig which it had promised to furnish. The garnishee further alleged in his answer that he had been informed that the Guaranty State Bank of Graham was the holder of the note, claiming some right in the same, but that he did not know whether the bank owned the same or held it for collection. He prayed that the bank and the payee of the note and George E. Kadane, its president, all be made parties to the suit, and that they be required to show what interest they had in the note, and that citation be issued and served on each of those parties requiring them to appear and assert such claims as they might have in the note.

All of those parties appeared and filed answers. George E. Kadane filed a disclaimer of any interest in the note. The payee of the note filed no answer or pleading of any character. By proper pleadings the Guaranty State Bank asserted ownership of the note through purchase from the payee in good faith for a valuable consideration before its maturity, and without any notice of any defense thereto, and especially alleged that the garnishee was not entitled to the credits claimed by him in his answer to the writ of garnishment.

The plaintiff Neill attacked the transfer of the note as being void because made without consideration and for the fraudulent purpose on the part of the payee to defeat its creditors in the collection of the debts due them. He further alleged that at the time of the transfer of the note to the bank the payee was notoriously insolvent and his insolvency was well known to the bank. Plaintiff further alleged that the note and mortgage given to secure the same had been filed for record in Houston county, where the rig was then located and is still located, and that no transfer and assignment of the note and mortgage to the Guaranty State Bank had been filed in the chattel mortgage records of Houston county. By reason of all of those allegations, the plaintiff sought to defeat the bank's claim of ownership and to establish his right to recover of the maker and payee of the note an amount sufficient to satisfy the former judgment against the payee, on which judgment the garnishment writ was sued out.

A judgment was rendered in plaintiff's favor, decreeing that the transfer of the note by the payee to the Guaranty State Bank was for the fraudulent purpose of defeating plaintiff in the collection of its judgment theretofore recovered against the payee of the note, and that such transfer was therefore

void. It was further decreed that plaintiff should recover of Elridge Price, the maker of the note, the Western Producing & Drilling Company, a corporation, George E. Kadane, the president of that corporation, and the Guaranty State Bank, jointly and severally, the amount of the principal, interest, and costs due the plaintiff on the judgment theretofore recovered by the plaintiff against the Western Producing & Drilling Company, for $100 additional as attorney's fee for filing his answer in garnishment. The Guaranty State Bank alone has prosecuted this appeal.

According to the uncontroverted testimony introduced upon the trial, the note in controversy was transferred and indorsed to the Guaranty State Bank before its maturity. The testimony of the president of the bank was positive and direct that the bank through him paid to the payee of the note, from whom it was acquired, its full face value and without any notice of any character of any vice in the note. Plaintiff sought to overcome that upon his plea that the proof of transfer was a simulated transaction without consideration, and for the sole purpose of defrauding plaintiff as one of the creditors of the payee, and as shown by the recital in the judgment plaintiff was awarded a recovery upon that theory.

[1] Several assignments of error have been presented to rulings of the court in admitting testimony of the garnishee, Elridge Price, as to several conversations had by that witness with George E. Kadane, president of the Western Producing & Drilling Company, after witness had heard that the bank had acquired the note. The witness stated that in one of the conversations Kadane promised to give him credit on the note for parts of the rig which had not been furnished according to contract. That testimony was offered to show by inference that the payee of the note still owned it, notwithstanding the purported transfer. The witness further testified that in one of those conversations Kadane had said, in effect, that the note had been transferred to the bank for the purpose of placing it beyond the reach of some of the creditors of the payee; that the payee was insolvent, and that the note was about the only asset left on its hands; that Kadane, its president, and J. C. Lovelace, the president of the bank, were good friends and were related; and that he (Kadane) was in a position to handle the note in any way he wanted to, and other statements of like kind. All of that testimony was objected to by counsel for the bank on the ground that it was hearsay and made out of the presence of any representative of the bank. Clearly those were valid objections, and, for the error in overruling them, the judgment must be reversed.

[2] We will say further that after plaintiff, over objections of the bank, had introduced testimony to the effect that the bank had delayed pressing the maker for the payment of the note, the court should have permitted the president of the bank to explain the cause of such delay as he offered to do, but his testimony was excluded on plaintiff's objection.

[3] It appears from the record in this case that, after service of the writ of garnishment and before the trial of the cause, the assets of the bank were taken over by the commissioner of banking of the state who was holding the same at the time of the trial; and appellant has assigned as fundamental error the failure of the court to require the banking commissioner to be made a party defendant to the suit. Following are statutory provisions relating to the duties and powers of the banking commissioner when he takes over the assets of an insolvent bank:

Rev. St. art. 456:

"Upon taking possession of the property and business of such state bank, the commissioner is authorized to collect moneys due to such corporation, and do such other acts as are necessary to conserve its assets and business, and shall proceed to liquidate the affairs thereof as provided in this chapter."

Article 457:

"The commissioner shall collect all debts due and claims belonging to such state bank."

Article 458:

"Upon the order of the district court, if in session, or the judge thereof, if in vacation, of the county in which such state bank was located and transacting business, the commissioner may sell or compound all bad or doubtful debts, and, on like order, may sell the real or personal property of such state bank, on such terms as the court shall direct."

Article 459:

"The commissioner may, if necessary to pay the debts of such state bank, enforce the individual liability of the stockholders."

Then follow numerous other articles of the statutes prescribing the duties of the banking commissioner, which include the duty to report to the state banking board a list of the assets and debts owing by the bank, providing for the right of priority of payment to depositors in favor of the state for the benefit of the depositors' guaranty fund upon all assets of the bank, including liabilities owing thereto, etc. Following are additional articles of the statutes on the same subject:

Article 482:

"The commissioner shall pay over the moneys so held by him to the persons respectively entitled thereto, upon the order of the state banking board, who shall direct such payment to such persons, upon being furnished satisfactory evidence of their right to the same. In case of doubt or conflicting claims, the state banking board may require an order of the district court, if in session, or the judge theref, if in vacation, authorizing and directing the payment thereof."

Article 483:

"The state banking board may apply the interest earned by the moneys held by the commissioner, or may authorize him to apply the same, toward defraying the expenses incurred in payment and distribution of such unclaimed deposits or dividends to the depositors and creditors entitled to receive the same, and the commissioner shall include in his official report a statement of the amount of interest earned by such unclaimed dividends."

Article 484:

"Any state bank may, at any time, place its affairs and assets under the control of the commissioner, by posting a notice on its front door, as follows: 'This institution is in the hands of the commissioner of insurance and banking of the state of Texas.'"

Article 485:

"The posting of this notice, or of the same notice by the commissioner or any state bank examiner, at any time when he shall have taken possession of the property and business of a state bank, shall be sufficient to place all its assets and property, of whatever nature, in the possession of the commissioner, and shall operate as a bar to any attachment proceedings whatever."

While it is unnecessary for us to determine the question thus presented, in view of the reversal to follow from the conclusions already expressed, we deem it proper, in view of another trial, to say that we believe the banking commissioner is a necessary party to the suit, since it appears from the record that he is in possession of the note in controversy as one of the assets of the bank, which it appears was transferred to the bank before its maturity. See, also, Marietta State Bank v. Galloway (Tex. Com. App.) 269 S. W. 776.

For the errors noted, the judgment is reversed, and the cause is remanded.